**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**DETROIT, MICHIGAN**

Yanier Hernandez Capote,                              Case No.

                              Petitioners,

v.

KRISTI NOEM, in her official
capacity as Secretary, U.S.
Department of Homeland Security;
TODD LYONS, in his official
capacity as Acting Director, U.S.
Immigration and Customs Enforcement;
and KEVIN RAYCRAFT, in his
official capacity as Acting Field
Office Director Detroit Immigration
and Customs Enforcement.

                            Respondents.
_____/

**PETITION FOR**
**WRIT OF HABEAS CORPUS**

1

Petitioner, through counsel respectfully requests that this Court issue a Writ of Habeas Corpus.   In support the Petitioners state:

## I.    INTRODUCTION

The Petitioner, by and through his undersigned counsel, hereby files this petition for a writ of habeas corpus and a motion for a temporary restraining order to enjoin Respondents from removing him from the United States and detaining him unlawfully.

## II.    JURISDICTION

1.  This Court has habeas corpus jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (original jurisdiction) 28 U.S.C. § 2241 et seq., Art. I § 9, cl. 2 of the United States Constitution (Suspension Clause) and common law.

2.  Federal district courts have jurisdiction to hear habeas claims by Noncitizens challenging the lawfulness or constitutionality of DHS conduct. Federal courts are not stripped of jurisdiction under 8 U.S.C. § 1252. *See* e.g., *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

3.  This Court must have jurisdiction under the Suspension Clause, notwithstanding statutory provisions that otherwise deprive the Courts of

jurisdiction over executions of removal orders, to review the actions of the executive branch's enforcement of the immigration laws if those actions violate the Constitution by depriving Petitioner of due process or other constitution rights. Compare Suspension Clause with 8 U.S.C. § 1252(g); see also *Reno v. Am.-Arab Anti Discrimination Comm.*, 525 U.S. 471, 482 (1999). The Suspension Clause protects the right to the writ of habeas corpus where, as here, no adequate or effective alternative remedy exists. See *Boumediene v. Bush*, 553 U.S. 723 (2008).


### III.    VENUE

4.   Venue lies in the Eastern District of Michigan, the judicial district in which the ICE Field Office Director is located. See *Roman v. Ashcroft*, 340 F.3d 314, 319-21 (6th Cir. 2003).

5.   The Petitioner is in the physical custody of Respondent, Detroit Immigration and Customs Enforcement, (ICE – Detroit) He is detained by ICE – Detroit at North Lake Processing Center in Baldwin, Michigan.  This ICE Processing Center is managed by GEO, a private prison company.

https://www.geogroup.com/about-us/who-we-are/

The Petitioner is under the direct control of the Respondents and their agents.

## IV.   PARTIES

6.   Yanier Hernandez Capote (Yanier) is a national of the Cuba who is Married to a U.S. citizen. He fled Cuba, a country who the U.S. recognizes has a long history of human rights abuses and is run by a Communist dictatorship of that suppresses any freedom.

7.   Defendant, Kristi Noem is the Secretary, U.S. Department of Homeland Security (DHS). She is generally charged with enforcement of the Immigration and Nationality Act and is further authorized to delegate such powers and authority to subordinate employees of the DHS and its various divisions. 8 USC §1103(a).    She is being sued in her official capacity.

8.   Defendant Todd Lyons is the Acting Director of Immigration and Customs Enforcement (ICE) and is responsible for the administration of the detention and removal of aliens in the United States. He is being sued in his official capacity.

9.   Defendant Kevin Raycraft is the Acting Director of the Detroit Field Office of the Immigration and Customs Enforcement (ICE - Det)  He is responsible for the detention and removal of aliens within the Detroit District.  He is being sued in his official capacity.

## V.   FACTS

10. Yanier is a citizen of Cuba who fled to the United States seeking refuge and protection.  He arrived in the United States on January 16, 2022, and after crossing the border, he presented himself to Respondent DHS. Respondent released him the following day so he could apply for asylum. Respondent DHS gave Yanier a List of Pro Bono Legal Services, a change of address form and a Notice To Appear (NTA) which states the date, time and address of his immigration court date.

11. Yanier filed an application for relief timely with Respondent DHS component US Citizenship and Immigration Services (USCIS) was because the NTA which must be filed with the immigration court had not been filed by ICE's Detroit attorneys. Therefore, the application had to be filed with USCIS.

12. Subsequently the Respondents filed the NTA with the immigration court In Detroit, Michigan and the immigration court sent out a hearing notice.  Yanier did not attend that court date because, though he had notified ICE Det of his change of address, ICE Det failed to notify the immigration court of the Plaintiff's new address.  When Yanier discovered that he had been ordered deported because he missed that first hearing, he filed a Motion to Reopen which was granted by the Immigration Judge.  He also filed a copy of his application for relief with the immigration court.

5

13. Yanier retained counsel and has appeared at all of the Immigration Court hearings.

14. Yanier married Magela a U.S. citizen born in Cuba on November 18, 2024. Magela filed an I-130 Alien Relative Petition (Petition) with USCIS which is the first step in obtaining permanent residency in the U.S. through marriage.  She filed the Petition on February 25, 2025.  (Ex. 1 – Petition Receipt)

15. Yanier notified the court of the marriage, and the Immigration Judge has continued the case until USCIS makes its decision on the Petition. Yanier has attended both status conferences scheduled by the Immigration Court.  The next status conference is scheduled for April 6, 2026.  (Ex. 2 – Status Conference notice)

16. In the interim, USCIS scheduled Yanier and Magela for an interview on the Petition on August 12, 2025.  (Ex. 3 – Petition Interview Notice)

17. However, unbeknownst to them and their counsel, this was not an Interview but rather a trap by USCIS and ICE – Det to detain Yanier.

18. The USCIS officer Harrison told Magela to remain in the waiting room since she was just going to interview Yanier.  Without saying a word to Yanier's counsel, Officer Harrison informed ICE-Det that Yanier was in the office so they could now arrest him.  Two ICE-Det officers handcuffed Yanier and took him away.  These officers told his counsel that Yanier was being taken to the ICE Detroit offices for processing but told counsel they would allow Yanier to call her

after and did not allow her to accompany them or to meet them at the ICE – Det offices.  When his counsel asked why he was arrested she was simply told that she got an email to arrest Yanier.  The ICE-Det officers then told counsel that they did not agree with arresting Yanier since he had no criminal record. They said they were just following orders.

19. Yanier was taken to the ICE-Det offices to be processed.  He requested To call his wife which they allowed him to do.  At the time Magela was in my office and when I asked Yanier if his ICE-Det officer was there he said yes but the officer told him he would not talk to his attorney.

20. Afterwards, counsel attempted to contact ICE – Det Supervisor Eric Fifer by phone to ascertain why Yanier had been detained since Yanier was in immigration court proceedings, had no criminal record and was married to a U.S. citizen.  ICE-Det Officer Horkey answered the phone and told counsel that she had the wrong number though that was completely untrue because Supervisor Fifer had provided his cellphone number to counsel previously.  Counsel then asked if she could talk to Supervisor Fifer, but Officer Horkey refused to allow counsel and stated he had no knowledge of or information on Yanier.

21.  Counsel waited half an hour and called the cell number again.  This time she got a message stating it was Supervisor Fifer's number and to leave a message. Supervisor Fifer did call counsel back from the same number that Officer Horkey, an hour before, had told counsel that it was not Supervisor Fifer's number.

Supervisor Fifer explained to counsel that he did not know why Yanier was arrested and that the orders came from Headquarters in Washington, D.C.   He did not tell counsel whether ICE-Det was going to deport him or not.  When counsel asked Supervisor Fifer about a bond to release Yanier he said she would have to contact Secretary Noem's office.  Obviously, that is not possible because her office would not take a call from an immigration attorney inquiring about one particular individual in Detroit.

22. The Court has broad, equitable authority under the habeas statute, 28 USC 2241, 2243 and the common law, to dispose of Petitioner's case as law and justice require, based on the facts and circumstances of his case, in order to remedy Petitioner's unlawful conditions of detention. The Court should exercise this authority to grant Petitioner's habeas corpus petition and to fashion any and all additional relief, necessary to effectuate Petitioner's expeditious release from unlawful detention. In the absence of such relief, Petitioner is suffering and will continue to suffer irreparable harm.

23.  The Due Process Clause provides that no person shall "be deprived of life, liberty, or property, without due process of law." *U.S. Const. amend. V.*  In this case there has been absolutely no due process of law.  Rather, the Respondents have not only detained someone who is abiding by all the rules but have refused to tell counsel why Yanier was detained and if they are planning to deport him before his immigration court hearing.

24. Consistent with the Due Process clause of the Fifth Amendment to the U.S. Constitution, ICE must release detainees where civil detention has become punitive and where release is the only remedy to prevent this impermissible punishment.  Due to the circumstances of this case, the deception involved in Yanier's arrest and detention, and the misrepresentations to counsel, one can only surmise that Yanier's detention is punitive in nature.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

## VIOLATION OF DUE PROCESS

25. Petitioners reallege the foregoing paragraphs as if set forth fully herein.

26.  The Fifth Amendment of the Constitution guarantees that civil detainees, including all immigrant detainees, may not be subjected to punishment. The federal government also violates substantive due process when it subjects civil detainees to cruel treatment and conditions of confinement that amount to punishment.

27. Due process protects a noncitizen's liberty and property interest including the adjudication of applications for relief and benefits made available under the immigration laws.

28. Petitioner's continued detention and potential deportation impede his

ability to pursue both of his applications for relief.

29.Petitioner was allowed to remain in the US to pursue his application for

relief and nothing has changed since that time other than his marriage to a U.S.

citizen which allows him to apply for an additional form of relief.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF THE
## ADMINISTRATIVE PROCEDURES ACT

30.  Petitioner re-alleges and incorporates each and every allegation

contained in the preceding paragraphs as if set forth fully herein.

31. Under the Administrative Procedures Act, "the final agency action for

which there is no other adequate remedy in court [is] subject to judicial review." 5

U.S.C. § 704.

32.The reviewing court "shall . . . hold unlawful and set aside agency action,

findings, and conclusions found to be (A) arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law, "or "unsupported by

substantial evidence." 5 U.S.C. § 706(2)(A), (E).

33.A court reviewing agency action "must assess . . . whether the decision

as based on a consideration of the relevant factors and whether there has been a

clear error of judgment; it must "examine the reasons for agency decisions – or, as

the case may be, the absence of such reasons." *Encino Motorcars LLC v. Navarro*,

136 S. Ct. 2117, 2125 (2016) (quoting *Motor Vehicles Mfrs.; Assn of U.S. State*

*Farm Mut. Auto Ins. Co.*, 462 U.S. 29, 43 (1983)); *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (quotations omitted).

34. Petitioner's continued detention because it is arbitrary and capricious. There is no rationale as to why Petitioner is detained.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF THE
### IMMIGRATION AND NATIONALITY ACT
### (Access to Counsel)

35. Petitioners reallege the foregoing paragraphs as if set forth fully herein.

36. The Immigration and Nationality Act (INA) guarantees the right to effective assistance of counsel in their removal proceedings at no cost to the government and to a full and fair hearing. 8 USC 1362

37. Petitioner is represented by counsel in removal proceedings. Respondents' policies, practices, and omissions have created a substantial barrier to Petitioner's counsel and her ability to represent the Petitioner.

### VI.    CONCLUSION

THEREFORE, the Petitioners respectfully request that this Court:

a. Issue a Writ of Habeas Corpus on the ground that their continued detention violates the Due Process Clause and order Petitioners' immediate release;

b. Issue a declaration that Respondents are restrained and enjoined from re-

detaining Petitioners while their Immigration matters are pending;

     c. Award Plaintiffs their costs and reasonable attorneys' fees in this action.


Respectfully submitted:

_____s/Caridad Pastor_____          Dated: August 13, 2025
Caridad Pastor C (P43551)
Pastor and Associates, P.C.
Attorneys for Petitioner
11 Broadway Suite 1005
New York, New York 10004
(248) 619-0065
carrie@pastorandassociates.com